UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
JUAN ARTILES,

                        Plaintiff,              Case No. 25-cv-08439
      v.
                                           **COMPLAINT**

CHESTNUT HOLDINGS OF NEW YORK, INC. and
975 S LLC,

                        Defendants.
---------------------------------------------------------------X

       Plaintiff JUAN ARTILES ("Plaintiff") by his attorneys, as and for his complaint against Defendants CHESTNUT HOLDINGS OF NEW YORK, INC. ("Chestnut") and 975 S LLC ("975 S") (collectively, "Defendants"), alleges as follows:

## PRELIMINARY STATEMENT

       1. Plaintiff brings this action for unpaid wages, including unpaid minimum wages, overtime compensation and interest thereon, liquidated damages and other penalties, and reasonable attorneys' fees and costs, under, *inter alia*, the Fair Labor Standards Act ("FLSA") §§ 6 and 7, 29 U.S.C. §§ 206 and 207.

       2. This action further invokes the supplemental jurisdiction of this Court to consider wage claims arising under New York Labor Law ("NYLL") (*e.g.*, New York Wage Payment Act; NY Labor Law §§ 191, 193, and 195; 12 N.Y.C.R.R. Part 141 and Part 142; and NY Labor Law § 215).

       3. At all relevant times, Defendants required Plaintiff to work in excess of forty (40) hours per week without paying him overtime compensation at one and one-half times Plaintiff's regular rate of pay as required by the FLSA and NYLL.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. §1331 and 29 U.S.C. §216(b).

5. This Court has supplemental jurisdiction to consider Plaintiff's claims arising under New York state law pursuant to 28 U.S.C. §1367, as Plaintiff's state law claims form part of the same case or controversy as Plaintiff's FLSA claims.

6. Venue is appropriate in this district pursuant to 28 U.S.C. §1391 because Defendants transact business and have agents in the Southern District, and this is the judicial district in which the events giving rise to the claims occurred, Plaintiff having performed work for Defendants in Bronx County. Defendants have facilities and employed Plaintiff in this district.

7. This Court has personal jurisdiction over the Defendants pursuant to New York Civil Practice Law and Rules § 301 in that, *inter alia*, Defendants reside and/or transact business within this State, employed Plaintiff within the State of New York, and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the laws of the State of New York, and accordingly may be served with process pursuant to Fed. R. Civ. P. 4(h)(1).

8. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202.

## THE PARTIES

**Plaintiff:**

9. Plaintiff is an adult, natural person who resides in the City of New York, County of Bronx, and State of New York.

10. From in or about March 2020, continuing through in or about June 2025, Plaintiff worked for Defendants at Defendants' apartment building located at 975 Sheridan

Avenue, Bronx, New York (the "Building"), where Plaintiff was employed by Defendants as the Building's superintendent, and also performed extensive non-superintendent work, including, without limitation, painting, plumbing, plastering, and repairing ceilings.

**Defendants:**

11. At all relevant times, Defendants were and still are a centrally managed real estate enterprise that owns, controls, and manages apartment buildings in New York City.

12. At all relevant times, Defendants operated their real estate business from Defendants' office located at 5676 Riverdale Avenue, Bronx, New York.

**Chestnut:**

13. At all times hereinafter mentioned, Chestnut was and is a domestic corporation doing business in New York State.

14. Upon information and belief, Chestnut maintains its principal place of business at 5676 Riverdale Avenue, Riverdale, NY.

15. At all relevant times, Chestnut functioned as a centrally managed real estate enterprise that owned and managed low-income, rental apartment buildings in New York City. Chestnut exercises ownership and control of these buildings through limited liability companies, including 975S, that nominally hold title to the buildings on Chestnut's behalf.

16. Chestnut, together with 975 S, jointly exercised control and decision making over the terms and conditions of Plaintiff's employment, including the wage policies and practices that are the subject of this Complaint.

**975 S:**

17. Upon information and belief, 975 S is a Delaware limited liability company authorized to conduct business in the State of New York.

18. Upon information and belief, 975 S is registered as a foreign limited liability company with the New York State Department of State.

3

19. Upon information and belief, 975 S holds title to the Building, where Plaintiff performed work.

## FACTUAL ALLEGATIONS

20. At all relevant times, Defendants were employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

21. In performing his routine job duties, Plaintiff was called upon to install refrigerators, carbon monoxide detectors, door locks, window guards, and other items at the Building, all of which, upon information and belief, had been moved in interstate commerce. Handling and installing such items and similar items were integral to Plaintiff's duties, and were essential and pervasive aspects of Defendants' business operations.

22. Plaintiff painted apartments with painting, that, upon information and belief, traveled in interstate commerce.

23. At all relevant times, Defendants jointly employed Plaintiff within the meaning of the FLSA and all other statutes referred to in this Complaint.

24. At all relevant times, Defendants jointly employed Plaintiff within the meaning of the NYLL, §§ 2 and 651.

25. Upon information and belief, at all relevant times, Defendants had gross revenues in excess of $500,000.00.

### *Defendants as Joint Employers*

26. Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay building maintenance employees by the same method, and share control over employees.

27. Each Defendant possessed substantial control over the policies and practices over Plaintiff's working conditions.

4

28. Defendants jointly employed Plaintiff and were Plaintiff's employer within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

29. Defendants jointly had the power to hire and fire Plaintiff and set Plaintiff's work schedule and conditions of employment. Solely by way of example, Defendants issued work-related correspondence to Plaintiff that bore the names of both 975 S and Chestnut.

30. By way of further example, Defendants required Plaintiff to maintain building maintenance logs that had the letterhead of Chestnut.

31. On publicly-filed documents, such as mortgage-related documents pertaining to the Building, Defendants identify their address as "975 S LLC, c/o Chestnut Holdings of New York Inc., 5676 Riverdale Avenue, Suite 307, Bronx, NY 10471."

### *Plaintiff's Employment with Defendants*

32. Defendants have knowingly engaged in unlawful business practices by requiring Plaintiff to work overtime on a daily and/or weekly basis without overtime compensation that Defendants were obligated to pay under the FLSA and NYLL; paying weekly sums that resulted in effective hourly rates below New York minimum wage; and failing to provide wage notices and accurate wage statements required by NYLL.

33. Throughout his employment with Defendants, Plaintiff's duties included, *inter alia*: taking out and sorting garbage and recyclables; sweeping and mopping; tending to the Building's boiler; cleaning exterior areas of the Building; repairing walls and ceilings; unclogging sinks and bathtubs; painting; installing cabinets, countertops and sinks; plugging boiler leaks; and countless similar tasks to maintain, repair and clean all areas of the Building.

34. The Building has approximately forty-seven (47) residential apartment units. Plaintiff was responsible for maintenance, repairs and cleaning, without the assistance of a porter.

35. Plaintiff was also required to perform tasks outside the normal duties of a building superintendent, including painting both the interior and exterior areas of the Building.

36. Plaintiff was required to be on-call to address emergent issues as they arose.

37. During the entire period of Plaintiff's employment (i.e., from in or about March 2020 to on or about June 9, 2025) Plaintiff regularly worked six days per week (Monday – Saturday), and, at various times, on Sundays to handle the garbage.  Plaintiff's weekly schedule, week-in and week out, was as follows: from Monday through Friday, from approximately 7:00 a.m. to 5:00 p.m. with a ½ hour lunch break; Saturdays, one hour at varying times to handle cleaning and garbage and recycling; and, on occasion, one hour on Sundays to handle garbage and recycling. Based on the foregoing, Plaintiff's typical weekly schedule entailed a minimum of 49.5 hours, not including time spent on call and attending to emergent matters.

38. During the entire period of Plaintiff's employment, on weekdays, Plaintiff's initial task at 7:00 a.m. involved cleaning the sidewalks and the common areas, including the entrances and lobbies of both of the adjoining buildings.  Plaintiff would then turn to inspecting and cleaning the hallways of the buildings.

39. During the entire period of Plaintiff's employment, Plaintiff's afternoons were spent attending to specific requests made of him by either tenants or management.  These tasks were wide-ranging and varying, and including, solely by way of example, clearing clogged drains, fixing window balances, painting, refinishing bathtubs, installing cabinets, and replacing sinks.

6

40. In addition to the foregoing, regular work schedule, at all relevant times, Plaintiff was required to remain on call from early morning through late at night, to perform emergent tasks, such as snow removal; facilitating building access for emergency responders; fixing leaks; and other matters requiring immediate attention.

41. During the entire period of his employment, Plaintiff was paid fixed weekly wages, that covered only the first forty hours of work.

42. Initially, Plaintiff was not asked to report any of his hours or track his schedule, and Defendants paid him a fixed weekly sum regardless of the number of hours worked.

43. Beginning in or about 2021, Plaintiff was required to use a mobile application to acknowledge or confirm hours that had been pre-set by Defendants, but which were not his actual work hours.

44. However, Defendants did not keep track of Plaintiff's daily start and end times or shifts, rather, Plaintiff merely confirmed a set number of hours established by Defendants. The system did not reflect actual hours worked. Defendants later discontinued the requirement that Plaintiff confirm his hours using the application, leaving no method for reporting hours or keeping track of hours worked.

45. Nor did Defendants provide any information to Plaintiff concerning which hours of on-call time and/or emergency work performed after hours were deemed hours worked. Instead, Defendants simply provided Plaintiff no wages at all for such time spent handling unforeseen matters.

46. The work hours alleged herein are conservative estimates, as Plaintiff was on-call, and was called upon to perform work, after hours.

47. For example, one evening in early 2024, after completing his regular work hours for the day, Plaintiff was required to address a major plumbing emergency involving a ruptured pipe on the Building's fourth floor. The rupture caused water to leak down

7

through multiple floors, requiring Plaintiff to spend a considerable amount of time handling the leak after hours.

48. Plaintiff was not paid overtime compensation despite working substantially more than 40 hours per work week in violation of the FLSA.

49. Defendants issued weekly payments to Plaintiff by direct deposit, without providing wage statements, in the net amount of approximately $494.40. Upon information and belief, based on the net deposits and applicable withholdings, Plaintiff's gross weekly wage was approximately $550.00. Plaintiff's weekly pay only covered the first forty hours of work per week. Consequently, Plaintiff was paid no compensation for at least nine and one-half of the hours he worked each week.

50. Plaintiff's rate of pay was below the New York City applicable minimum wage rate for large employers.  Pursuant to NYLL § 652, the applicable minimum wage rate in 2024 was $16.00 per hour.  However, Plaintiff was paid only $13.75 per hour ($550 ÷ 40) for the first forty hours of work, and no compensation for the extensive hours worked above the first forty per week.

51. Defendants' failure to pay Plaintiff the required amount of overtime pay and minimum wages was willful.

52. Notably, Chestnut and its principal, Jonathan Wiener, were the subject of federal court proceedings brought on behalf of superintendents involving similar wage and hour violations, but Defendants did not remedy their unlawful wage practices as to Plaintiff.

53. Plaintiff's wages were reduced by costs Plaintiff incurred because he was required to use his own tools to perform his duties, in violation of Section 141-1.9 of the Building Service Industry Wage Order.

54. For example, during the course of his employment, Plaintiff purchased a drill, a manual snake, an electric snake, a snow plowing machine, pliers and a screwdriver, all without reimbursement from Defendants.

55. Defendants willfully disregarded and purposefully evaded the recordkeeping requirements of the FLSA and NYLL and supporting regulations.

56. Defendants' record keeping violations were intended to, and had the effect of, intimidating Plaintiff and preventing him from pursuing his legal rights to overtime pay.

57. Defendants failed to provide Plaintiff with weekly wage statements with his weekly pay as required by the NYLL.

58. Defendants failed to provide Plaintiff all of the proper and complete notices in English and in Spanish (Plaintiff's primary language) of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1) at the time of his hiring and/or for each change in Plaintiff's rate of pay.

**AS AND FOR A FIRST CAUSE OF ACTION**
**FLSA Overtime Wage Violations, 29 U.S.C. §§ 201** *et seq.*

59. Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs with the same force and effect as though fully set forth herein.

60. At all relevant times hereto, the Defendants have been employers engaged in commerce, as defined under 29 U.S.C. § 203(b) and (d).

61. At all relevant times hereto, the Defendants employed Plaintiff as a superintendent, an employment position which engaged Plaintiff in commerce, as defined under 29 U.S.C. §§ 203(b), (e), (g) and 29 U.S.C. § 207(a)(1).

62. At all times relevant hereto, the Defendants have been an "enterprise engaged in commerce or in the production of goods for commerce," as defined under 29 U.S.C. § 203(s)(1).

9

63. In the performance of his duties for Defendants, Plaintiff worked substantially more than forty (40) hours per week, yet did not receive overtime compensation for the work, labor and services he provided to Defendants, as required by the FLSA, 29 U.S.C. §§ 206 and 207.

64. Defendants' violations of the FLSA were willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

65. As a result of the foregoing, Plaintiff seeks judgment against Defendants for all unpaid wages, including overtime wages owed by Defendants to Plaintiff for the three-year period preceding the filing of this case, together with an award of an additional equal amount as liquidated damages, and costs, interest, and reasonable attorneys' fees, as provided for under 29 U.S.C. § 216(b).

## AS AND FOR A SECOND CAUSE OF ACTION
### Violation of the New York Minimum Wage Act

66. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

67. The minimum wage provisions of the NYLL, including Article 19, and its supporting regulations, apply to Defendants and Plaintiff.

68. Defendants, in violation of the NYLL, willfully paid Plaintiff less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

69. Based on Plaintiff's weekly wages of $550.00, Plaintiff was paid an effective hourly rate of $13.75 per hour.

70. Plaintiff was damaged in amounts to be determined at trial.

71. Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants his unpaid minimum wages, liquidated damages as provided for

by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## AS AND FOR A THIRD CAUSE OF ACTION
### New York Labor Law – Overtime Wages

72. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

73. The overtime wage provisions of the NYLL, including Article 19, and its supporting regulations, apply to Defendants and Plaintiff.

74. Defendants willfully failed to pay Plaintiff for all of the hours that he worked in excess of 40 hours in a workweek.

75. Defendants willfully failed to pay Plaintiff overtime at a rate of one-half his effective, regular hourly rate for hours worked in excess of 40 hours per workweek.

76. Defendants willfully failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff.

77. As a result of Defendants' knowing or intentional failure to pay Plaintiff overtime wages for hours worked in excess of 40 hours per workweek, Plaintiff is entitled to compensation for unpaid overtime, liquidated damages, attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## AS AND FOR A FOURTH CAUSE OF ACTION
### NYLL Wage Theft Prevention Act – Failure to Provide Wage Statements

78. Plaintiff incorporates by reference each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

79. The NYLL and Wage Theft Prevention Act ("WTPA") require employers to provide employees with an accurate wage statement each time they are paid. Defendants willfully failed to provide Plaintiff with wage statements at the end of every pay period that

correctly identified the name of the employer; address of employer; number of overtime hours worked; and such other information as required by NYLL § 195(3).

80. Defendants failed to provide Plaintiff with wage statements setting forth the dates of work for which Plaintiff was being paid; the basis of his pay; and the address and telephone number of the employer(s).

81. As a result of Defendants' failure to provide Plaintiff with accurate wage statements with each payment of wages, he was prevented from: (i) comparing his rate of pay to his hours worked; (ii) determining that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

82. Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants liquidated damages of $250.00 per work day that the violations occurred, or continue to occur, up to $5,000.00, together with costs, reasonable attorneys' fees, pre-judgment and post-judgment interest, and injunctive and declaratory relief, pursuant to the NYLL § 198(1-d).

## AS AND FOR A FIFTH CAUSE OF ACTION
### NYLL Wage Theft Protection Act - Failure to Provide Wage Notices

83. Plaintiff incorporates by reference each and every allegation of the preceding paragraphs

84. The NYLL and WTPA require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

85. Defendants failed to furnish Plaintiff at the time of hiring, and whenever there was a change to his rate of pay, with wage notices containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the

employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the NYLL § 195(1).

86. Defendants' failure to comply with NYLL § 195(1) goes beyond mere technical violations. It is directly intertwined with and facilitated Defendants' practice and policy of not paying Plaintiff his overtime wages due.

87. Defendants did not provide Plaintiff with any notice whatsoever, let alone the wage notice required under NYLL § 195(1), upon hire or when his pay rates changed. Defendants did this to conceal from Plaintiff that he was a non-exempt employee entitled to overtime pay, as well as the regular and overtime rates he should have received. By concealing this information, Defendants avoided informing Plaintiff of his legal rights and thereby avoided paying him his overtime wages due per workweek as alleged in this Complaint.

88. As a result of Defendants' violations of NYLL § 195(1), Plaintiff is entitled to recover statutory damages and reasonable attorneys' fees and costs, pursuant to NYLL § 198(1–b).

<strong><u>AS AND FOR A SIXTH CAUSE OF ACTION</u></strong><br><strong>Illegal Deductions, 12 N.Y.C.R.R. §141-2.10(b)</strong>

89. Plaintiff incorporates each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

90. In violation of the New York Labor Law, Article 19, § 193 and NYCRR 141-2.10(b) Defendants forced Plaintiff to incur unlawful reductions in his wages by having to spend his own money on work-related expenses, including tools of the trade to complete mandated work. This further reduced Plaintiff's wages below the amounts required by the NYLL and FLSA.

91. As a result of the foregoing, Plaintiff seeks judgment against Defendants for reimbursement of unlawful deductions, as well as liquidated damages, and interest, and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper.

**RELIEF SOUGHT**

**WHEREFORE,** Plaintiff, Juan Artiles, respectfully requests that the Court grant the following relief:

1. Declaring, adjudging and decreeing that Defendants violated the overtime provisions of the FLSA as to Plaintiff;

2. Declaring, adjudging and decreeing that Defendants violated the minimum wage and overtime wage provisions of the NYLL as to Plaintiff;

3. Awarding Plaintiff damages and restitution for unpaid compensation, unpaid minimum wages, unpaid overtime compensation, including interest thereon, and statutory penalties in an amount to be proven at trial, as well as liquidated damages;

4. Awarding statutory damages for Defendants' failure to provide Plaintiff with wage statements and a wage notice required by the NYLL's Wage Theft Protection Act;

5. Declaring that Defendants' violations of the FLSA and NYLL were willful;

6. For all other Orders, findings and determinations identified and sought in this Complaint;

7. For pre-judgment and post-judgment interest on the amount of any and all economic losses, at the prevailing legal rate;

8. For reasonable attorneys' fees and expenses of this action, pursuant to 29 U.S.C. § 216(b), New York Labor Law and as otherwise provided by law; and

9. Such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: New York, New York
October 11, 2025

**RAPAPORT LAW FIRM, PLLC**

By: */s/ Marc A. Rapaport*
Marc A. Rapaport
80 Eighth Avenue, Suite 206
New York, NY 10011
(212) 382-1600
mrapaport@rapaportlaw.com

*Attorneys for Plaintiff*